UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff - Appellee,<br><br>vs.<br><br>LESTER E. TITUS,<br><br>Defendant - Appellant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:15-cr-241 CW<br>Judge Clark Waddoups<br><br>*Related Case:* 2:14-cr-351 RTB<br>Magistrate Judge Robert T. Braithwaite |

## INTRODUCTION

This matter is before the court on Appellant Lester E. Titus's appeal from the United States Magistrate Court for the District of Utah.[1] Mr. Titus was charged with a misdemeanor and convicted for knowingly and willfully failing to obtain a Special Recreation Permit and pay required fees before conducting a group bike ride to Corona Arch. Mr. Titus contends he was deprived of his right to a jury trial and that the evidence was insufficient to support his conviction. For the reasons stated below, the court vacates Mr. Titus's conviction and remands this case for further proceedings consistent with this order.

---

1  After examining the briefs and appellate record, the court concludes it may resolve this matter on the briefs without oral argument. DUCrimR58-1(c).

## BACKGROUND

In July 2014, Mr. Titus was charged with knowingly and willfully violating 43 U.S.C. § 1701 and 43 C.F.R. § 2932.57(a)(1). Section 1701 states the policy of the United State with respect to federal land management. It directs that regulations and rules be developed to ensure public lands are properly managed and protected. *See* 43 U.S.C. § 1701(a). Section 2932.57(a)(1) constitutes one of those regulations and states that a person "must not . . . [f]ail to obtain a Special Recreation Permit and pay the fees required by this subpart." 43 C.F.R. § 2932.57(a)(1). It warns that if a person is convicted "of failing to obtain a Special Recreation Permit," the person "may be subject to a sentence of a fine or imprisonment or both for a Class A misdemeanor in accordance with 18 U.S.C. 3571 and 3581 *et seq*." *Id.* § 2932.57(b)(1). Failing to pay required fees may, however, subject a person only "to a sentence of a fine not to exceed $100 for the first offense, or a sentence of a fine and or imprisonment for a Class A or B misdemeanor . . . for all subsequent offenses." *Id.* § 2932.57(b)(2).

In 2012, Mr. Titus organized and conducted a bike tour in the Needles Overlook Area on BLM land south of Moab. Because Mr. Titus did not obtain a Special Recreation Permit or pay required fees, Officer Tyler Fouss issued a citation to him. Officer Fouss explained the permitting requirements to Mr. Titus at that time, including that he could not conduct an event on public land without following those permitting requirements.

Approximately two years later, the events leading to this case occurred. Officer Fouss learned that Mr. Titus was advertising another commercial bike tour. Officer Fouss saw the advertisement on April 16, 2014. The bike tour was scheduled for May 29, 2014 through May 31, 2014, with the first day of the tour including a one-and-a-half-mile hike to Corona Arch. A few days before the bike tour, Officer Fouss verified that Mr. Titus had not obtained a Special

Recreation Permit or paid the required fees. He therefore went to the Corona Arch trailhead on May 29, 2014 and watched Mr. Titus take his group up the trail. When they returned, Office Fouss issued Mr. Titus a second citation.

When Mr. Titus first advertised the bike tour and hike, Corona Arch did not fall within the boundaries of land owned by the BLM. Rather, the State of Utah owned and managed Corona Arch as a School and Institutional Trust Lands ("SITLA") parcel. On May 8, 2014, however, the State transferred the parcel to the BLM. Despite this transfer, twenty days later, the marquee at Corona Arch trailhead still informed Mr. Titus and his group that Corona Arch was on State trust lands.

Although the Corona Arch parcel had been owned and managed by the State until May 8, 2014, the trailhead, the parking lot by the trailhead, and the one-and-a-half-mile trail to the arch have always been owned by the federal government. On the day of the hike, a smaller sign by the marquee informed visitors that the area was a bighorn sheep lambing area and to keep dogs on a leash at all times. There were two BLM logos on the sign. A registration box stood part way up the trail. The box contained a map, and a BLM logo and a registration sheet were visible if one opened the lid. No markings existed on the outside of the box. Finally, there was a marker on the trail that had a BLM logo on it.

During a bench trial on April 23, 2015, Mr. Titus argued that the small logos on the bighorn sheep sign and the trail marker were insufficient to put him on notice that he was on BLM land, especially when compared to the larger marquee that identified the trail as state land. Moreover, because no evidence was presented that he had signed the registration list or even opened the registration box's lid, Mr. Titus argued the box provided no notice he was on BLM land. The trial court rejected Mr. Titus's arguments and concluded the evidence was sufficient to

show he knowingly failed to obtain a Special Recreation Permit and pay required fees.  Mr. Titus timely filed this appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

The scope of an appeal to the district court from a bench trial before a magistrate judge "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).  This means "this court reviews a magistrate judge's factual findings for clear error and its legal conclusions de novo." *United States v. Fronk*, 2014 U.S. Dist. LEXIS 95397, at *10 (D. Utah July 11, 2014).  On challenges to the sufficiency of the evidence, the court "reviews *de novo* whether the government presented sufficient evidence to support [a] conviction." *Id.* (citing *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007)). The evidence, however, must be viewed "in the light most favorable to the prosecution." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Therefore, the court must determine whether a reasonable fact finder "could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Id.* (citing *Sells*, 477 F.3d at 1235) (quotations omitted).  Only if the finding of guilt is "so insupportable as to fall below the threshold of bare rationality" may the court reverse a conviction. *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

### II. SUFFICIENCY OF THE EVIDENCE

Mr. Titus contends the evidence was insufficient to show he knowingly and willfully failed to obtain a Special Recreation Permit.  "[T]o establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 192 (1998) (quotation and citation omitted).

While Mr. Titus does not dispute he had knowledge of the permitting requirements, he asserts the signs around the Corona Arch trail were insufficient to notify him that he was on federal land and therefore needed a permit for a group event in that area.

An important aspect of this analysis is Mr. Titus's knowledge of the permitting requirements. Two years before the events of this case, Mr. Titus had organized and conducted a bike tour on BLM land south of Moab and had been issued a citation for failing to obtain a Special Recreation Permit. This put Mr. Titus on notice that he had to obtain a permit and pay required fees anytime he conducted an event on federal land. It also put him on notice of his obligation to look for important indicators of whether he was on federal land. While the BLM signs and logos around the Corona Arch trail were not large, a reasonable fact finder could conclude that one with heightened knowledge of the permitting requirements, such as Mr. Titus, would have seen the signs and logos and known he was on federal land. The court therefore cannot conclude the evidence is so lacking as to fall below the threshold of bare rationality.

Moreover, the focus on how the trail looked on the day of the hike ignores Mr. Titus's obligation to obtain a Special Recreation Permit and pay required fees *before* the event takes place. One does not show up on the day of an event, look at whether there are federal signs and markers, and only then seek to obtain a permit. Mr. Titus had knowledge of the law and his obligations prior to the event. The BLM signs and logos only served to confirm what Mr. Titus should have already known.

### III. RIGHT TO A JURY TRIAL

Mr. Titus contends he was entitled to a jury trial based on the Sixth Amendment. "It is well established that the Sixth Amendment, like the common law, reserves the jury trial right for prosecutions of serious offenses, and that 'there is a category of petty crimes or offenses which is

not subject to the Sixth Amendment jury trial provision.'" *Lewis v. United States,* 518 U.S. 322, 325 (1996) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 159 (1968)) (alteration omitted). A "petty offense" is defined in 18 U.S.C. § 19, as "a Class B misdemeanor, a Class C misdemeanor, or an infraction, for which the maximum fine is not greater than the amount set forth for such an offense in section 3571(b)(6) or (7) in the case of an individual."

In this case, the penalty for failing to obtain a Special Recreation Permit is a Class A Misdemeanor. The potential penalty for a Class A misdemeanor exceeds significantly the penalty for a Class B or C misdemeanor. *See* 18 U.S.C. § 3571(b) (specifying the fine for a Class A misdemeanor may be up to $100,000, but the fine for a Class B or C misdemeanor may not exceed $5,000 for a Class B or C misdemeanor); *see also* 18 U.S.C. § 3581(b)(b) to (8) (stating the term of imprisonment for a Class A misdemeanor may be up to one year, whereas the prison term may only be up to six months for a Class B misdemeanor and up to thirty days for a Class C misdemeanor). Hence, Mr. Titus's crime falls outside of the statutory definition of a "petty offense."

Rule 58(b)(2)(F) of the Federal Rules of Criminal Procedure also addresses petty offenses. It specifies that a person is not entitled to a jury trial if the person faces "a *petty offense* for which *the court determines* that, in the event of conviction, no sentence of imprisonment will be imposed."[2] Fed. R. Crim. P. Rule 58(a)(3) (emphasis added). The trial court used this section to deny Mr. Titus a jury trial because it concluded that even "in the event of conviction of the defendant" it would not impose a "sentence of imprisonment."[3] Order, at 2 (Dkt. No. 13 in Case No. 2:14-cr-351). It appears the trial court interpreted this Rule to mean that it could convert Mr.

---

2  The 1990 Committee Notes states that the term "petty offense" is defined in 18 U.S.C. § 19, which statute used to be expressly referenced in the rule and is now only implied in the rule.

3  In keeping with its ruling, after Mr. Titus was convicted, the trial court imposed a $250 fine, no imprisonment, and no probation. Judgment, at 2, 4–5 (Dkt. No. 27 in Case No. 2:14-cr-351).

Titus's crime into a petty offense when it determined it would not impose a prison sentence. The Rule does not give such authority. Instead, it is only operational when the offense at hand is already a petty offense. Then when the court determines to impose no sentence for that petty offense, it may follow the Rule's remaining procedures.

The issue of whether a court may convert a Class A misdemeanor to a petty offense by determining it will not impose a prison sentence is not a well-settled area of law. In *Lewis v. United States*, 518 U.S. 322, 323 (1996), the Supreme Court was "asked to decide whether a defendant who would otherwise have a constitutional right to a jury trial may be denied that right because the presiding judge has made a pretrial commitment that the aggregate sentence imposed will not exceed six months." Unfortunately, the Court never reached the issue because it decided the case on other grounds. *Id.* at 324.

The Tenth Circuit has stated that when a person is charged with multiple *petty offenses*, but only faces a maximum of six months' imprisonment based on a judge's decision not to impose a greater aggregate sentence, the person has no right to a jury trial. *United States v. Bencheck*, 926 F.2d 1512, 1520 (10th Cir. 1991). It has not addressed, however, whether the same rule applies when a person is charged with a crime more serious than a petty offense.[4]

In *United States v. Lewis*, 65 F.3d 252 (2d Cir. 1995), the Second Circuit rejected the reasoning in *Bencheck* because it concluded that "[t]he Supreme Court has made clear that courts should look to Congress's determination as to the seriousness of a particular offense" and "that 'the judiciary should not substitute its judgment as to seriousness for that of the legislature.'" *Id.* at 254 (quoting *Blanton v. North Las Vegas*, 489 U.S. 538, 541 (1989)) (alteration omitted).

---

4 For example, one would question if the same reasoning would apply to deny a person a jury trial when charged with a felony merely on the basis that a judge determines it will not apply a prison sentence exceeding that of a Class B misdemeanor.

7

Thus, according to the Second Circuit, "self-imposed limitations on sentencing by the court cannot deprive a defendant of his constitutionally protected right to a jury trial." *Id.* at 255.

The Second Circuit's decision appears to be in harmony with an earlier Tenth Circuit decision. In *United States v. McAlister*, 630 F.2d 772, 774 (10th Cir. 1980), the Court faced the question of whether an offense was petty. It concluded "[t]he congressional definition of a petty offense" was "highly relevant because it objectively places crimes in either of two classes of seriousness." *Id.* It further concluded "the statutory standard serves the interests of uniformity, objectivity, and practical judicial administration." *Id.* (quotation, citation, and alterations omitted). The Court then noted that "if by adopting the statutory standard we require too many jury trials, we properly err on the side of protecting a constitutional right." *Id.*

The court concludes it is bound by the reasoning in *McAlister*. Congress has defined a "petty offense" in 18 U.S.C. § 19. Mr. Titus's charge for failing to obtain a Special Recreation Permit constitutes a Class A misdemeanor, which by definition is not a petty offense. The court therefore concludes the trial court erred in denying Mr. Titus a jury trial.

## CONCLUSION

For the reasons stated above, the court concludes the trial court erred in denying Mr. Titus a jury trial. Accordingly, the court vacates Mr. Titus's conviction and remands this case for further proceedings in conformity with this decision.

DATED this 2nd day of March, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Judge